IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY | : : : | CIVIL ACTION |
| v. | : : | |
| CM VANTAGE SPECIALTY INSURANCE COMPANY, ET AL. | : : | NO. 21-1616 |

## MEMORANDUM

**Padova, J.**                                                                                                                                    **March 10, 2022**

      Defendants CM Vantage Specialty Insurance Company and Penn Outdoor Services, LLC have moved to dismiss the Complaint in this declaratory judgment action. For the reasons that follow, the Motion is granted in part and denied in part.

I.     BACKGROUND

      This lawsuit was brought by State Farm Fire and Casualty Company ("State Farm") against CM Vantage Specialty Insurance Company ("CM Vantage") and Penn Outdoor Services, LLC ("Penn Outdoor"). State Farm seeks a declaration that the Defendants have a duty to defend and indemnify its insureds, the Providence Hill Homeowners Association and Castlebridge Management, LLC (the "Property Owners"), in a personal injury lawsuit (the "Underlying Action") brought in state court arising from the slip and fall of James Petruno on property located at 126 Watchill Road, East Fallowfield Township, Pennsylvania (the "Property").[1] (Compl. ¶¶ 46-57.) State Farm also seeks equitable subrogation of the costs it has incurred while defending Property Owners in the Underlying Action. (Id. ¶¶ 58-68.)

---

[1] The Underlying Action is captioned Petruno v. Providence Hill Homeowners Association, et. al., No. 01671 (Philadelphia Cty. Ct. of Common Pleas, May Term 2019). (Compl. ¶ 15.)

According to the Complaint, on November 14, 2014, Property Owners entered into the Castlebridge Management, LLC Contract (the "Contract") with Penn Outdoor, a snow and ice removal and landscaping company, pursuant to which Penn Outdoor would complete "2014-2018 Snow Removal Services" as specified in the Contract. (Id. ¶¶ 35-36 (citation omitted); Compl. Ex. C (Docket No. 1-3) at 2 of 11.) Article 12 of the Contract requires Penn Outdoor (also referred to as the "Contractor") to carry and maintain "Comprehensive General Liability [Insurance] Covering—$1,000,000 Broad Form Property Damage[, and] Bodily and Personal Injury and Property Damage [of] $500,000." (Compl. Ex. C, Art. 12, at 4 of 11.) Article 13 of the Contract requires Penn Outdoor to "furnish the Owner with a certificate of insurance from his insurance carrier verifying coverage specified above is in effect and in full force" before starting the work covered by the Contract. (Id., Art. 13, at 5 of 11.) The Contract defines the "Owner" as "Providence Hill Homeowners' Association . . . located in care of Castlebridge Management, LLC." (Id. at 2 of 11.) Article 14 of the Contract requires Penn Outdoor to indemnify and hold Property Owners harmless as follows:

> The Contractor agrees to indemnify and hold harmless the Owner and its Management Agent against loss or expense by reason of liability imposed by law upon the Owner and its Management Agent for any loss, damage, liability or expense on account of damage to property and injuries . . . . arising or in any manner growing out of performance of any work or the supplying of any material under this contract, regardless of whether or not it is caused in any part by the omission, whether negligent or not, of a party indemnified hereunder, and shall defend at its own expense any suits or other proceedings brought against the Owner, officers, agents, and employees, or any of them, on account thereof, and pay all expenses and satisfy all judgments which may be incurred by or rendered against them or any of them in connection therewith.

(Id. at 5 of 11.) The specific Snow Removal Services specified in the Contract are listed in a document entitled "Providence Homeowners' Association 2014-2015 Snow Removal Specifications" that is attached to the Contract. (Id. at 6-11 of 11.) This document also requires

2

that "[t]he contractor will provide to the [Providence Hill Homeowner's] Association an Insurance Certificate evidencing general liability and workmen's compensation insurance, naming [Property Owners] as an Additional Insured." (Id. at 10.)

Petruno alleges in the Underlying Action that on February 8, 2018, he was walking on a paved walkway on the Property "when he was caused to slip and fall on . . . [an] icy and dangerous condition that had formed in a depression on the walkway." (Compl. Ex. A (Docket No. 1-1) ¶ 13.) Petruno further alleges that the hazardous condition was caused by the negligence of Property Owners and Penn Outdoor, which was responsible for the maintenance and safety of the Property, and that he was harmed as a result of their alleged negligence. (Id. ¶¶ 6, 17-18.) The Underlying Action has been scheduled for trial in June 2022. (See 12/14/21 Hr'g Tr. at 3, 16.)

The Complaint in the instant proceeding further alleges that State Farm "undertook the defense" of Property Owners in the Underlying Action pursuant to a liability insurance policy that it had previously issued to Property Owners. (Compl. ¶¶ 7-8, 24.) CM Vantage had also previously issued a liability insurance policy (the "CM Vantage Policy") to Penn Outdoor. (Id. ¶ 9; Compl. Ex. B (Docket No. 1-2).) The Complaint alleges that State Farm "tendered the defense" of Property Owners in the Underlying Action to CM Vantage and Penn Outdoor multiple times, but that CM Vantage and Penn Outdoor rejected those tenders. (Compl. ¶¶ 25-26.)

The Complaint alleges that Property Owners are additional insureds under the CM Vantage Policy. (Id. ¶ 27.) The Complaint refers to an endorsement, form PLI 51 10 06 16, entitled "Amendment-Additional Insured-Designated Entity." (Id. ¶ 28.) The endorsement provides that Additional Insureds, who are not identified in the endorsement, "are added to the Who Is An Insured Section of the Coverage Form" and that the Additional Insureds "(are) an insured but only as respects claims or 'suits' for damages caused, in whole or in part, by: 1. Your acts or omissions;

3

or 2. The acts or omissions of those acting on your behalf." (Compl. Ex. B at 21 of 43.) The Liability Coverage Declarations provide that the following are additional insureds for purposes of form PLI 51 10 06 16: "Any person or organization who you [Penn Outdoor] are required to add as an additional insured on this policy under a written contract or written agreement in effect prior to any loss or damage, but only to the extent required in the written contract or written agreement." (Id. at 4 of 43.)

The Complaint also alleges that the CM Vantage Policy "provides coverage to [Penn Outdoor] for liability it assumes in an 'insured contract.'" (Compl. ¶ 31 (quoting Compl. Ex. B at 6 of 43).) The CM Vantage Policy provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Compl. Ex. B at 5 of 43.) It excludes from this coverage "'[b]odily injury' or 'property damages' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." (Id. at 6 of 43.) However, that exclusion does not apply to "liability for damages . . . [a]ssumed in a contract or agreement that is an 'insured contract.'" (Id.) The CM Vantage Policy defines "insured contract" as "[t]hat part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." (Id. at 17 of 43.) The Complaint alleges that "[i]n the Contract, which pertains to Penn Outdoor's business, Penn Outdoor assumed the tort liability of [Property Owners] to pay for 'bodily injury' to a third person." (Compl. ¶ 54 (citation omitted).)

The Complaint asserts three claims against the Defendants. In Count I, State Farm seeks a declaration that CM Vantage has a duty to indemnify and defend Property Owners in the Underlying Action. It alleges that CM Vantage has a duty to defend and indemnify Property

4

Owners because Property Owners are additional insureds entitled to coverage under the Additional Insured Endorsement to the CM Vantage Policy and under the insured contract provisions of that Policy. (Compl. ¶¶ 47-57.)  In Counts II and III, State Farm seeks equitable subrogation of the defense costs it has expended in providing a defense to Property Owners in the Underlying Action. Count II seeks an order requiring CM Vantage to reimburse State Farm for the defense costs it incurred in the Underlying Action. (Id. ¶¶ 59-62.)  Count III seeks an order requiring Penn Outdoor to reimburse State Farm for the defense costs it incurred in the Underlying Action.  (Id. ¶¶ 64-68.)

Defendants assert four grounds for dismissal of the Complaint.  First, they ask us to dismiss Count I of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) on the ground that we lack subject matter jurisdiction of State Farm's claim for indemnification because it is not ripe since the Complaint fails to establish that State Farm has suffered any injury in fact or that there is an actual case or controversy for the Court to decide.  Second, they argue that the Complaint should be dismissed in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) because the Complaint doesn't plausibly allege that Property Owners are additional insureds entitled to coverage under CM's policy.  Third, they argue that we should dismiss Counts II and III, which assert claims for equitable subrogation pursuant to Rule 12(b)(6), because the Complaint does not plausibly allege that State Farm is entitled to equitable subrogation using the factors set out by the United States Court of Appeals for the Third Circuit in Berkley Assurance Co. v. Colony Ins. Co., 858 F. App'x 561 (3d Cir. 2021).  Fourth, Defendants argue that the Complaint should be dismissed in its entirety pursuant to Rule 12(b)(6) because Penn Outdoor and Property Owners have filed cross-claims against one another in the Underlying Action that encompass the claims asserted by State Farm in the instant Complaint and the state court should decide those claims in the first instance.

II.     LEGAL STANDARD

Defendants move to dismiss under both Federal Rule of Civil Procedure 12(b)(1) for a lack of subject matter jurisdiction and under Rule 12(b)(6) for a failure to state a claim upon which relief can be granted. When a party argues that subject matter jurisdiction is lacking under Rule 12(b)(1), we must first "determine whether the challenge is a facial attack or a factual attack." GBForefront, L.P. v. Forefront Mgmt. Grp., LLC, 888 F.3d 29, 35 (3d Cir. 2018) (citing Constitution Party of Pa. v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014)). A facial attack is an argument that "a claim on its face . . . is insufficient to invoke subject matter jurisdiction." Id. (quoting Const. Party of Pa., 757 F.3d at 358). "'A factual attack . . . is an argument that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction.'" Id. (second alteration in original) (quoting Const. Party of Pa., 757 F.3d at 358).

Defendants' argument regarding our subject matter jurisdiction is limited to the facts alleged in the Complaint and thus constitutes a facial attack on our subject matter jurisdiction. "In reviewing a facial attack, '"the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."' Const. Party of Pa., 757 F.3d at 358 (quoting In re Schering Plough Corp. Intron/ Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012)). "Thus, a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*, construing the alleged facts in favor of the nonmoving party." Id. (citation omitted). "This is in marked contrast to the standard of review applicable to a factual attack, in which a court may weigh and 'consider evidence outside the pleadings.'" Id. (quoting Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000)). "[P]roceeding under Rule 12(b)(1) inverts the burden of persuasion. When presenting a Rule 12(b)(6) motion, the defendant bears the

burden to show that the plaintiff has not stated a claim.  But under Rule 12(b)(1), the plaintiff must prove the court has subject matter jurisdiction." Davis v. Wells Fargo, 824 F.3d 333, 349 (3d Cir. 2016) (citing Kehr Packages v. Fidelcor, Inc., 926 F.2d 1406, 1409 (1991)).

Defendants' remaining arguments seek dismissal of State Farm's claims pursuant to Rule 12(b)(6).  When deciding a motion to dismiss pursuant to Rule 12(b)(6), we "'consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.'" Alpizar-Fallas v. Favero, 908 F.3d 910, 914 (3d Cir. 2018) (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)).  We take the factual allegations of the complaint as true and "construe the complaint in the light most favorable to the plaintiff." DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (quoting Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011)).  However, we "'are not bound to accept as true a legal conclusion couched as a factual allegation.'" Wood v. Moss, 572 U.S. 744, 755 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim,", which "'give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting first Fed. R. Civ. P. 8(a)(2); then Conley v. Gibson, 355 U.S. 41, 47 (1957)).  The complaint must allege "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing

7

Twombly, 550 U.S. at 556). In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "to raise a right to relief above the speculative level." Geness v. Admin. Office of Pa. Courts, 974 F.3d 263, 269 (3d Cir. 2020) (quoting Twombly, 550 U.S. at 555).

III.    DISCUSSION

    A.    Subject Matter Jurisdiction

Defendants contend that we should dismiss Count I to the extent it seeks a declaration that CM Vantage must indemnify Property Owners with respect to the Underlying Action. The Complaint alleges that "CM Vantage is required to provide . . . indemnity as to [Property Owners] in connection with the Underlying Action either as additional insureds under the CM Vantage Policy or as contractual indemnitees of Penn Outdoor." (Compl. ¶ 57.) Defendants assert that, because the state court has yet to adjudicate liability in the Underlying Action, State Farm has not suffered an injury-in-fact, and there is no case or controversy to be decided by this court.[2]

"'The existence of a case and controversy is a prerequisite to all federal actions, including those for declaratory or injunctive relief.'" Peachlum v. City of York, 333 F.3d 429, 433 (3d Cir. 2003) (quoting Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio, 40 F.3d 1454, 1462 (3d Cir. 1994)). Thus, the jurisdiction of the federal courts "extends only to claims that are ripe for resolution." Wayne Land & Min. Grp. LLC v. Delaware River Basin Comm'n, 894 F.3d

---

[2] Defense counsel clarified at the December 14, 2021 Hearing held with respect to this Motion that Defendant only seeks to dismiss Count I for lack of subject matter jurisdiction as to State Farm's claim for a declaration that CM Vantage has a duty to indemnify it in connection with the Underlying Action. Defendants' lack of subject matter jurisdiction argument does not extend to State Farm's claim for a declaration that CM Vantage has a duty to defend its insureds in the Underlying Action. (See 12/14/21 Hr'g at 24; id. at 4 ("with respect to the duty to defend, I would say that there is [an adverse interest] . . . ." (referring to the test for ripeness of declaratory judgment actions identified by the Third Circuit in Travelers Ins. Co. v. Obusek, 72 F.3d 1148, 1154 (3d Cir. 1995)).)

509, 522 (3d Cir. 2018) (citing Peachlum, 333 F.3d at 433). "'The function of the ripeness doctrine is to determine whether a party has brought an action prematurely, and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.'" Id. (quoting Peachlum, 333 F.3d at 333). When considering the ripeness for judicial resolution of a declaratory judgment action, "we are guided by three key factors: 'the adversity of the interest of the parties, the conclusiveness of the judicial judgment[,] and the practical help, or utility, of that judgment.'" Siemens USA Holdings Inc v. Geisenberger, 17 F.4th 393, 412 (3d Cir. 2021) (alterations in original) (quoting Marathon Petroleum Corp. v. Sec'y of Fin., 876 F.3d 481, 496 (3d Cir. 2017)) (citing NE Hub Partners, L.P. v. CNG Transmission Corp., 239 F.3d 333, 341 (3d Cir. 2001)).

1. Adversity

"Parties' interests are adverse where harm will result if the declaratory judgement is not entered." Travelers Ins. Co. v. Obusek, 72 F.3d 1148, 1154 (3d Cir. 1995). "[T]he party seeking declaratory relief need not wait until the harm has actually occurred to bring the action. Thus, in an appropriate circumstance, a litigant can seek a declaratory judgment where the harm is threatened in the future." Id. (citing Armstrong World Indus., Inc. v. Adams, 961 F.2d 405, 412 (3d Cir. 1992)). However, adversity is lacking in a declaratory judgment action seeking indemnification until "the party seeking indemnity has made a payment on the underlying claim." Invensys v. American Mfg. Corp., Civ. A. No. 04-3744, 2005 WL 600297, at *3 (E.D. Pa. Mar. 15, 2005). Indeed, the Third Circuit has recognized that, "in general, to pursue an indemnity claim, the indemnitee must have made a payment to a third party." Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs, Loc. Union No. 66, 580 F.3d 185, 192 n.3 (3d Cir. 2009); see also Hartford Fire Ins. Co. v. InterDigital Communications Corp., 464 F. Supp. 2d 375, 378-79

9

(D. Del. Dec. 14, 2006) ("As a general matter, courts refrain from adjudicating whether an insurer has a duty to indemnify the insured until after the insured is found liable for damages in the underlying action." (citations omitted)).  State Farm argues that the allegations of the Complaint satisfy this factor because the probability of future harm in this case is real and substantial even though Property Owners have not been, and may not be, found liable in the underlying action.  See Travelers Ins. Co., 72 F.3d at 1154 (noting that "a litigant can seek a declaratory judgment where the harm is threatened in the future" if "the plaintiff [can] demonstrate that the probability of that future event occurring is real and substantial").

In this case, the state court has yet to determine liability in the Underlying Action and Property Owners may not be required to pay a judgment to Petruno in that suit.  (See Compl. ¶ 15; 12/14/21 Hr'g Tr. at 3, 16.)  The Contract's indemnification clause provides that Penn Outdoor "agrees to indemnify and hold harmless [Property Owners] against loss or expense by reason of liability imposed by law upon [Property Owners] for any loss, damage, liability or expense on account of . . . injuries, . . . arising . . . out of performance of any work . . . under this contract."  (Compl. Ex. C. at 5 of 11.)  Plaintiff has acknowledged that "the determination of whether [Defendants] are required to defend and indemnify the property owners . . . . depends on Article 14 [the indemnification clause] of the contract").)  (12/14/21 Hr'g Tr. at 14.)  Thus, to trigger the alleged duty to indemnify, the state court must both conclude that Property Owners are liable and also find as a matter of fact that the harm arose in a manner that implicates the indemnification clause contained in the Contract.  That the state court must both find facts to trigger the indemnification clause, as well as conclude that Property Owners are liable, weighs against a finding of adversity at this time.  See Axis Ins. Co. v. PNC Fin. Servs. Grp., Inc., 135 F. Supp. 3d 321, 326 (W.D. Pa. 2015) (finding no adversity in a declaratory judgment action because the

underlying court would have to both conclude that plaintiff is liable and also find that certain facts existed in order to trigger the duty to indemnify in question). Accordingly, we conclude that the adversity factor is not satisfied in this case.

        2.        Conclusiveness

A declaratory judgment is conclusive if it changes or clarifies the legal status of the parties. See Travelers Ins. Co., 72 F.3d at 1155 (citing Step-Saver Data Sys. Inc. v. Wyse Tech., 912 F.2d 643, 648 (3d Cir. 1990)). "In analyzing this factor, we must 'determine whether judicial action at the present time would amount to more than an advisory opinion based upon a hypothetical set of facts.'" Pittsburgh Mack Sales & Serv., Inc., 580 F.3d at 190 (quoting Presbytery of N.J., 40 F.3d at 1468). State Farm argues that the Complaint satisfies this factor because the requested declaration would conclusively establish that Property Owners are insureds under the CM Vantage Policy and would thus clarify the legal status of the parties. However, the declaration that State Farm seeks would not conclusively establish that CM Vantage has an obligation to indemnify Property Owners with respect to the Underlying Action because, under the CM Vantage Policy, no such obligation will exist unless and until the state court finds that Property Owners are liable to Petruno. (See Compl. Ex. B at 4, 17 of 43; 12/14/21 Hr'g Tr. at 15 ("We recognize that the duty to indemnify is only triggered when something is actually covered under the policy, and we would certainly . . . rely on any underlying findings of liability.") Thus, a declaration that CM Vantage has an obligation to indemnify Property Owners at this point "would amount to [no] more than an advisory opinion based upon a hypothetical set of facts." Pittsburgh Mack Sales & Serv., Inc., 580 F.3d at 190 (quotation omitted); see also Step-Saver Data Sys., Inc., 912 F.2d at 648 (concluding conclusivness factor not satisfied where the declaratory judgment requested would be "based on a contingency—if the [underlying lawsuits] can establish [a] defect." (quotations omitted)); Home

11

Ins. Co. v. Perlberger, 900 F. Supp. 768, 773 (E.D. Pa. 1995) (concluding that declaratory judgment would not be conclusive where the state court in an underlying action could make a determination on liability that would render the requested declaratory judgment "irrelevant"). Accordingly, we conclude that the "conclusiveness" factor is not satisfied in this case.

       3.     Utility

Finally, the requested declaratory judgment "must be of some practical help to the parties." Travelers Ins. Co., 72 F.3d at 1155. "The Declaratory Judgments Act was enacted 'to clarify legal relationships so that plaintiffs (and possibly defendants) could make responsible decisions about the future.'" Id. (quoting Step–Saver, 912 F.2d at 650.) State Farm asserts that the requested declaratory judgment regarding indemnification would be useful to the parties because a determination of CM Vantage's obligation to indemnify Property Owners in the Underlying Action would influence Property Owners' defense of, and possible settlement of, the Underlying Action. At least one court has previously concluded that this factor was satisfied where the requested declaration would facilitate settlement of a related lawsuit. See Home Ins. Co. v. Powell, Civ. A. No. 95-6305, 1996 WL 269496, at *7 (E.D. Pa. May 20, 1996) (concluding that the utility factor was satisfied because "a declaratory judgment regarding the role of the plaintiff in the underlying litigation will facilitate settlement and hence the speedy resolution of the legal malpractice suit.") Thus, the requested declaration could have utility with respect to Property Owners' defense in the Underlying Action and any future settlement negotiations between the parties to that action. However, because we conclude that the other two ripeness factors are not satisfied in this case, we conclude that State Farm's request for a declaration that CM Vantage has an obligation to indemnify Property Owners in the Underlying Action is not ripe. Accordingly, we grant the motion to dismiss Count I of the Complaint as it pertains to State Farm's request for

a declaration that CM Vantage has an obligation to indemnify Property Owners in the Underlying Action.

B.    Failure to State a Claim Upon Which Relief Can Be Granted

Defendants argue that the Complaint does not plausibly allege a claim for a declaration that CM Vantage has a duty to defend Property Owners in the Underlying Action in Count I or for equitable subrogation of the defense costs incurred by State Farm for the defense of Property Owners in the Underlying Action in Counts II and III. They maintain that the Complaint fails to allege that Property Owners are "additional insureds" under the CM Vantage Policy who are entitled to a defense provided pursuant to that Policy. Defendants also seek dismissal of State Farm's claims for equitable subrogation on the ground that the Complaint does not state a cognizable claim for equitable subrogation under the test described the Third Circuit in Berkley Assurance Co. v. Colony Ins. Co., 858 F. App'x at 566-67 (citing Tudor Dev. Grp., Inc., 968 F.2d at 361).[3]

1.    Additional Insureds

Defendants maintain that the Complaint does not plausibly allege that Property Owners are "additional insureds" under the CM Vantage Policy. Defendants argue that Property Owners

---

[3] Defendants also argue that Plaintiff's claims for equitable subrogation could be considered as claims for equitable contribution and that the Complaint also fails to state a plausible claim for equitable contribution. However, "[t]he term 'contribution' means the act of any one or several insurers . . . in reimbursing one of their number who has paid the whole debt or loss, or who has paid greater than its share of the debt or loss." 15 Steven Plitt et al., COUCH ON INSURANCE § 217:5 (3d ed. 2020). "Contribution is to be distinguished from subrogation and indemnification, which are equitable or contractual devices for placing the burden for a loss on the party ultimately liable or responsible for it and by whom it should have been discharged." Id. Here, State Farm argues that Defendants are wholly liable for the entire debt incurred on behalf of Property Owners—not that liability for the debt is shared between the parties. (See Compl. ¶¶ 61-62, 67-68.) Thus, Counts II and III assert claims for subrogation, not contribution. Accordingly, we deny the Motion to Dismiss with respect to this argument.

cannot be "additional insureds" under the CM Vantage Policy unless and until there is a finding in the Underlying Action that Petruno's injuries arose from "work performed" by Penn Outdoor. (See Compl. Ex. B at 4, 21 of 43.) They also argue that Property Owners are not "additional insureds" under the CM Vantage Policy because the Contract only requires Penn Outdoor to provide Property Owners with a certificate of insurance, which does not itself bind coverage. See Quincy Mut. Fire Ins. Co. v. Imperium Ins. Co., 636 F. App'x 602, 606 n.18 (3d Cir. 2016)) ("A certificate of insurance is not part of the [insurance] policy—if it states that there is coverage but the policy does not, the policy controls.").

The Complaint alleges that Property Owners are "additional insureds" under CM Vantage's policy. (Compl. ¶ 27.) The CM Vantage Policy provides additional insured coverage to "[a]ny person or organization who you [Penn Outdoor] are required to add as an additional insured on this policy under a written contract or written agreement in effect prior to any loss or damage, but only to the extent required in the written contract or written agreement . . . ." (Id. Compl. Ex. B at 4 of 43.) The Complaint alleges that Property Owners are "additional insureds" based on a clause in the Contract that requires Penn Outdoor to "provide to [Property Owners] an Insurance Certificate evidencing general liability and workmen's compensation insurance, naming [Property Owners] as an Additional Insured." (Compl. Ex. C at 10 of 11; see also Compl. ¶ 49.) Thus, Property Owners' status as "additional insureds" does not depend on a finding of liability by the state court in the Underlying Action. Accordingly, we deny the Motion to Dismiss with respect to Defendant's argument that Property Owners cannot be "additional insureds" until the state court finds that Penn Outdoor is liable to Petruno in the Underlying Action.

Defendants next argue that Property Owners are not "additional insureds" under the CM Vantage Policy because the Contract does not require Penn Outdoor name Property Owners as

additional insureds in an insurances policy, rather it requires Penn Outdoor to provide Property Owners with "a certificate of insurance from his insurance carrier verifying coverage . . . ." (Compl. Ex. C, Art. 13.) Defendants rely on Quincy Mut. Fire Ins. Co. v. Imperium Ins. in which the Third Circuit considered whether a certificate of insurance that stated "[the purported additional insured] is named as an additional insured" established that the purported additional insured was actually an additional insured under the relevant insurance policy. 636 F. App'x at 603. In that case, the certificate of insurance also "bore this warning: 'This certificate is issued as a matter of informatio[n] only and confers no rights upon the certificate holder. This certificate does not amend, extend or alter the coverage afforded by the policies below.'" Id. The Third Circuit concluded that a certificate of insurance that "specifically stated that it was for informational purposes only and did not modify the terms, exclusions, or conditions of the policy . . . was without effect" and did not add the purported additional insured as an additional insured under the insurance policy. Id. at 606. In this case, Property Owners are not listed by name as "additional insureds" in the CM Vantage Policy. (See Compl. Ex. B at 21 of 43.) However, the CM Vantage Policy's Additional Insured Endorsement Schedule and Liability Coverage Declarations states that, an "additional insured" is "[a]ny person or organization who you [Penn Outdoor] are required to add as an additional insured on this policy under a written contract or written agreement in effect prior to any loss or damage . . . ." (Id. at 4 of 43.) State Farm maintains that the Contract includes such a requirement. The Snow Removal Specifications attachment to the Contract provides that: "contractor will provide to [Property Owners] an Insurance Certificate evidencing general liability and workmen's compensation insurance, naming [Property Owners] as an Additional Insured." (Compl. ¶ 49; Compl. Ex. C at 10.) Thus, unlike Quincy Mut. Fire Ins. Co., the record before us on this Motion to Dismiss contains an insurance policy that allegedly

15

includes Property Owners as additional insureds, rather than a certificate of insurance that has been provided for "informational purposes only" and does not "modify the terms, exclusions, or conditions of the policy." 636 F. App'x at 606. Accordingly, we deny the Motion to dismiss with respect to Defendant's argument that the Complaint does not plausibly allege that Property Owners are "additional insureds" under the CM Vantage Policy.

    2.    Equitable Subrogation

Defendants argue the Complaint does not allege sufficient facts to state plausible claims for equitable subrogation and, therefore, that we must dismiss Counts II and III of the Complaint. "Equitable subrogation is appropriate '[w]here property of one person is used in discharging an obligation owed by another . . . under such circumstances that the other would be unjustly enriched by the retention of the benefit thus conferred.'" Berkley Assurance Co. v. Colony Ins. Co., 858 F. App'x 561, 566 (3d Cir. 2021) (quoting Tudor Dev. Grp., Inc. v. U.S. Fid. & Guar. Co., 968 F.2d 357, 361 (3d Cir. 1992)). The Third Circuit has noted that there are five elements that must exist for an insurance company to obtain relief through equitable subrogation: "(1) [the insurer] paid [its] Insureds to protect its own interest; (2) it did not act as a volunteer; (3) it was not primarily liable for the debt; (4) the entire debt was satisfied; and (5) allowing subrogation will not cause injustice to the rights of others." Id. at 566-67.

Applying the Berkley Assurance Co. test to the instant case, we first assess whether the Complaint plausibly alleges that State Farm acted to protect its own interest in paying the defense costs of Property Owners in the Underlying Action. The Complaint alleges that State Farm paid for Property Owners' defense costs in the Underlying Action. (See Compl. ¶ 24.) The Complaint also alleges that Property Owners are State Farm's insureds. (Compl. ¶¶ 7-8.) Insurers act in their own interest when they pay for the defense of their insureds. See Berkley Assurance Co., 858 F.

16

App'x at 567 (concluding that the plaintiff acted in its own interest in paying the defense costs of its insureds). We conclude that the Complaint alleges that State Farm acted in its own interest in providing a defense to its insureds, Property Owners, in the Underlying Action and that the Complaint thus plausibly alleges the first element of a claim for equitable subrogation.[4]

Second, we consider whether the Complaint plausibly alleges that State Farm did not act as a volunteer. "A volunteer is 'a stranger or intermeddler who has no interest to protect and is under no legal or moral obligation to pay under the circumstances.'" State Farm Fire & Cas. Co. v. Hartman Contractors, Civ. A. No. 14-6535, 2017 WL 6311650, at *2 (E.D. Pa. Dec. 11, 2017) (quoting Massachusetts Bonding & Ins. Co. v. Car & Gen. Ins. Corp., 152 F. Supp. 477, 482 (E.D. Pa. 1957)). "An insurance payment is not voluntary . . . 'if it is made with a reasonable or good faith belief in an obligation or personal interest in making that payment.'" Id. (quoting IAP Worldwide Servs., Inc. v. UTi United States, Inc., Civ. A. No. 04-4218, 2006 WL 305443, at *10 (E.D. Pa. Feb. 8, 2006)). Here, the Complaint alleges that Property Owners are insureds under the

---

[4] Defendants also argue that "permitting reimbursement for defenses expenses incurred during this period [of litigation] 'would amount to a retroactive erosion of the broad duty to defend in Pennsylvania . . . . [because] by providing a defense to Insured . . . Insurer acted as much in its own interest as it did in the Insured's.'" Berkley Assurance Co., 858 F. App'x at 568 (quoting Am. & Foreign Ins. Co. v. Jerry's Sport Center, 2 A.3d 526, 544, 546 (Pa. 2010)). In Berkley Assurance Co. the court was considering whether permitting an insurer to receive reimbursement *from its insured* for defense costs incurred while a declaratory judgment action regarding its obligation to pay defense costs was pending amounted to unjust enrichment. Id. The court stated that "insurers have an established duty to defend during the period of uncertainty. The insurer's duty to defend 'is a distinct obligation separate and apart from the insurer's duty to provide coverage.'" Id. (quoting Am. & Foreign Ins. Co., 2 A.3d at 541, 543-44). Here, however, State Farm is not seeking reimbursement of defense costs from its insureds. Rather, State Farm brings a claim for equitable subrogation seeking payment of its defense costs from another insurance company that State Farm alleges is ultimately responsible to pay those costs. See, e.g. id. (discussing a Pennsylvania Superior Court case in which "the court permitted recovery through equitable subrogation when another insurer rendered a defense, in part to protect its own interests and despite not being primarily liable (citing F.B. Washburn Candy Corp. v. Fireman's Fund, 541 A.2d 771, 773-74 (Pa. Super. Ct. 1988))). Consequently, we deny Defendants' Motion to Dismiss with regard to this argument.

State Farm Policy and that "State Farm undertook the defense of [Property Owners] in connection with the Underlying Action." (Compl. ¶¶ 7-8, 24). Accordingly, the Complaint alleges that State Farm is not "a stranger or intermeddler" and that it paid the defense costs for its insureds in the Underlying Action "with a reasonable or good faith belief in an obligation or personal interest." State Farm, 2017 WL 6311650 at *2 (quotations omitted). We conclude that the Complaint plausibly alleges the second element of a claim of equitable subrogation.

Third, we determine whether the Complaint plausibly alleges that Defendants are primarily liable for the amount that State Farm paid for Property Owners' defense costs. The Complaint alleges that CM Vantage has an obligation to defend Property Owners in the Underlying Action. (Compl. ¶¶ 61, 65.) It also specifically identifies provisions of the CM Vantage Policy and the Contract that, it alleges, establish that Property Owners qualify as "additional insureds" under the CM Vantage Policy and that the Contract is an "insured contract" under the CM Vantage Policy. (Id. ¶¶ 28-44.) The Complaint further alleges that State Farm "tendered the defense" of Property Owners to CM Vantage and Penn Outdoor, but that both parties "rejected the tenders." (Id. ¶¶ 25-26.) We conclude that the Complaint alleges that Defendants are primarily liable for the debt for which State Farm seeks subrogation and, accordingly, we conclude that the Complaint plausibly alleges the third element of a claim of equitable subrogation.

Fourth, we consider whether the Complaint plausibly alleges that State Farm seeks reimbursement only for the costs it has actually incurred. See Berkley Assurance, 858 F. App'x at 569 (noting that the plaintiff satisfied the fourth element of a claim for equitable subrogation because it "only seeks the amount it has already paid in defense costs"); see also id. at 569-70 ("[T]he subrogee stands in the precise position of the subrogor[, so] the subrogee should be limited to recovering in subrogation the amount received by the subrogor." (second alteration in original)

18

(quoting Hagans v. Const. State Serv. Co., 687 A.2d 1145, 1150 (Pa. Super. Ct. 1997))); c.f. 16 Steven Plitt et al., COUCH ON INSURANCE § 223:1 (3d ed. 2020) ("The [subrogation] action must relate to the same loss as the insurer paid to the insured.").  Here, the Complaint alleges that State Farm "undertook the defense" of Property Owners in the Underlying Action and that it seeks recovery only of costs it has already incurred. (Compl. ¶¶ 24, 62, 68.)  Accordingly, we conclude that the Complaint plausibly alleges the fourth element of a claim for equitable subrogation.

Finally, we assess whether the Complaint alleges that equitable subrogation would cause injustice to Defendants.  Defendants assert that allowing equitable subrogation of defense costs before a ruling on liability in the Underlying Action would cause them injustice.  Specifically, Defendants assert that it would be unjust to require them to pay for Property Owners' defense costs in the Underlying Action before there has been a determination as to whom, if anyone, is liable for Petruno's injuries, or whether his injuries resulted from work performed by Penn Outdoors under the Contract.  The purpose of equitable subrogation is "the working out of an equitable adjustment between the parties by securing the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it."  16 Steven Plitt et al., COUCH ON INSURANCE § 222:8 (3d ed. 2020).  Here, should State Farm prevail on its equitable subrogation claim, allowing equitable subrogation of defense costs would "secur[e] the ultimate discharge of a debt by the [party or parties] who in equity and good conscience ought to pay it."  Id.  This remains the same regardless of whether the state court has determined liability in the Underlying Action because the determination of liability will not affect whether Defendants in this case must reimburse State Farm for defense costs.  Consequently, we conclude that the Complaint does not allege facts from which we can infer that Defendants would be subject to injustice if we allow Plaintiff's equitable subrogation claims to survive the instant Motion to Dismiss.  We conclude, accordingly, that the

Complaint plausibly alleges the fifth element of an equitable subrogation claim and we deny the Motion to Dismiss as to Defendants' argument that the Complaint fails to plausibly allege claims for equitable subrogation against Defendants.

    C.    Pending State Court Ruling

Finally, Defendants assert that this action should be dismissed because Penn Outdoor and Property Owners have brought cross claims for indemnification against each other in the Underlying Action.[5]  They contend that any decision by this Court with regard to State Farm's claim for indemnification in this lawsuit could conflict with the eventual determination of those cross-claims by the state court and ask that we dismiss the instant Complaint on that basis.  However, we need not reach this argument because we have already granted the Motion to Dismiss as to Count I of the Complaint insofar as it seeks a declaration that State Farm is entitled to indemnification.  Thus, there can be no conflict between our ruling and that of the state court with regard to indemnification and we deny the Motion to Dismiss with respect to this argument.

IV.    CONCLUSION

For the foregoing reasons, we grant Defendants' Motion to Dismiss in part and deny it in part.  We grant the Motion as it pertains to State Farm's request in Count I for a declaration that CM Vantage has an obligation to indemnify Property Owners in the Underlying Action as we conclude that this request is not ripe for adjudication by this Court.  The Motion is denied in all other respects.  An appropriate Order follows.

                                             BY THE COURT:
                                             s/ John R. Padova_____
                                             John R. Padova, J.

---

[5] Plaintiff confirmed, during the Hearing, that Penn Outdoor and Property Owners have asserted cross-claims against each other with regard to contractual indemnification pursuant to the Contract.  (12/14/21 Hr'g Tr. at 15.)